

FILED
Jul 11, 2025
06:49 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD


# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Julia Havey | ) Docket No. 2024-60-3630 |
| | ) |
| v. | ) State File No. 38543-2024 |
| | ) |
| SageHome, LLC, d/b/a | ) |
| New Bath Today, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Kenneth M. Switzer, Chief Judge | ) |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the alleged employer questions the trial court's order compelling it to provide the claimant a panel of orthopedic physicians. Specifically, the alleged employer avers that the court erred in finding that the claimant was likely to prevail at trial in proving she was an employee rather than an independent contractor. Upon careful consideration of the record, we affirm the trial court's order and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Emily Pfeiffer, Nashville, Tennessee, for the alleged employer-appellant, SageHome, LLC, d/b/a New Bath Today

Julia Havey, Joelton, Tennessee, claimant-appellee, pro se

### Factual and Procedural Background

Julia Havey ("Claimant") was making a customer call for SageHome, LLC, d/b/a New Bath Today ("NBT") on March 6, 2024, when she fell on a sidewalk, allegedly injuring her left shoulder, low back, left hip, and right ankle. She reported the incident and was told that, as an independent contractor, she was not eligible for workers' compensation benefits. After NBT refused to authorize medical care, Claimant filed a petition for benefit determination on May 23, 2024, and NBT filed a notice of denial on July 16, 2024.

1

NBT based its denial on the contract of employment ("the Contract"), dated May 3, 2023, which was entitled "Sales Representative Agreement (Independent Contractor)." There are several pertinent provisions upon which NBT relied, including an acknowledgement that "the Sales Representative . . . is a 'direct seller' as defined by the Internal Revenue Code" and therefore "will not be treated as an employee . . . for employment tax purposes." Another provision in the Contract stated: "[NBT] shall have no duty to supervise the work of [Claimant]." The Contract also authorized Claimant to hire her own independent contractors or subcontractors, and it stated she could work elsewhere, as long the employment was not in competition with the business of NBT.

During the expedited hearing, Claimant was the only witness to testify live. She explained that she became interested in working for NBT because it offered a flexible position as an independent contractor for in-home bathroom renovation sales. Claimant testified that, after working in sales for in-home window renovation as a "W-2 employee," she wanted "less time, four days a week, autonomy, [to] do [her] own thing, be [her] own boss." According to Claimant, she was told the position with NBT would offer those benefits and would only require two hours of driving each day. With that understanding, Claimant accepted the sales position as a "1099 worker."

Claimant testified she was required by NBT to attend a two-week training program in Indiana, for which she provided her own transportation. NBT covered the initial hotel room expense, but $1,000 was later deducted from her pay as reimbursement to NBT. NBT provided some meals during the training and also paid a per diem. According to Claimant, the goal of the training was for her to memorize and recite a script for sales calls, a copy of which was admitted as an exhibit during the hearing. She was also required to download an application ("App") on her personal computer tablet and personal phone that contained proprietary information belonging to NBT. There was a monthly fee to maintain access to the App, which Claimant testified she paid out of pocket. Claimant also received marketing materials and business cards with her name, the company's name, and her personal cell phone number. The Contract required she return the marketing materials if or when her work with NBT was terminated or she would have to reimburse NBT for their cost.

According to Claimant's testimony, following the training, she returned to Tennessee, at which time the requirements of the position diverged significantly from what she had expected. Each night, she would receive her "leads" for the next day on the App, which would contain up to three leads for in-person sales calls scheduled at 10:00 am, 2:00 pm, and/or 6:00 pm. The locations could be spread across Middle Tennessee and Kentucky, and, on one occasion, Claimant recalled working a fifteen-hour day due to the distance she was required to drive between appointments. Claimant testified that, although she occasionally had three leads in one day, she sometimes went weeks without leads. Even on those days, however, she was required to be on "stand-by" in case NBT scheduled a last-minute appointment. Finally, Claimant testified without rebuttal that she

2

was required to use the marketing materials provided by NBT and was required to follow the script provided by NBT on every sales call. She also asserted that, due to the proprietary nature of the App and the marketing materials provided, she did not believe she could "hire helpers" at any time and give them access to those materials, despite what the Contract said.

Claimant admitted she was able to take herself off the schedule if she did not plan to work on a certain day and further testified that she had taken significant time off when her father passed away and when her grandchild was born. However, she also testified, without rebuttal, that she faced threats of termination and other negative statements from her direct supervisor, Matthew Melton ("Melton"), as a result of her taking time off. Claimant submitted evidence that Melton and another supervisor, Mike Rouser, required all salespersons to attend a mandatory weekly phone meeting and that Melton specifically stated all sales representatives were obligated to return all company phone calls between 8:00 am and 4:00 pm "immediately" unless they were in a sales meeting or there was an emergency. Finally, Claimant testified that supervisors would occasionally attend and observe sales calls and that Melton attended three of her sales calls.

NBT provided no live witnesses during the hearing but submitted an affidavit from Jason Bisch, Senior Vice-President of NBT. In his affidavit, Mr. Bisch reiterated the terms of the Contract and emphasized that Claimant had agreed she would work as an independent contractor. NBT did not file a wage statement before the expedited hearing, although Claimant filed her personal bank records establishing her income from NBT. Claimant testified she was paid commission for successful sales, although she did not believe she was paid the full 35% commission she was promised by NBT. She further testified she did not work elsewhere while working for NBT and did not hire any helpers or "subcontractors."

As to the accident, Claimant testified she had reported to a potential customer's home for a sales call but was denied entry by the homeowner. She was carrying her company-mandated marketing materials, which she estimated weighed forty-five pounds, when she fell. She reported experiencing pain in her right ankle immediately. The following day, her back, left shoulder, and left hip hurt. She reported the accident in a group text thread with her coworkers, and a sales manager informed Claimant she would be responsible for her own medical care because she was an independent contractor. Claimant took a week off before returning to work. Ultimately, Claimant sought medical care on her own and obtained an MRI on July 29, 2024, at Advanced Orthopedics and Spine, which revealed "partial-thickness articular surface tearing" in her left shoulder.

Following the expedited hearing, the trial court found Claimant's testimony was credible and concluded she was likely to prevail at trial in proving she was an employee rather than an independent contractor at the time of the accident. It ordered NBT to provide Claimant a panel of orthopedic specialists, but it denied Claimant's request for

3

temporary disability benefits because she had provided no evidence that she was restricted from working as a result of her alleged work injury. NBT has appealed.[1]

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018).

Although the trial court's factual findings are entitled to a presumption of correctness, the determination of whether a worker is an employee or an independent contractor is a question of law that we review *de novo* with no presumption of correctness. *See Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 418 (Tenn. 2009). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

**Analysis**

NBT contends the court incorrectly analyzed the evidence in its determination that Claimant is likely to prove at trial she was an employee under the factors enumerated in Tennessee Code Annotated section 50-6-102(10)(D)(i). These seven factors are: (a) the right to control the conduct of the work; (b) the right of termination; (c) the method of payment; (d) the freedom to select and hire helpers; (e) the furnishing of tools and equipment, (f) self-scheduling of work hours; and (g) the freedom to offer services to other entities. As we have previously explained, "[t]hese factors are not absolutes that preclude examination of each work relationship as a whole and are no more than a means

---

[1] Claimant filed a motion seeking "Expedited Review" of this appeal, citing Tenn. Comp. R. and Regs. 0800-02-22-.03. If Claimant is referring to subsection (1) of that rule, her request is misplaced. That subsection is concerned with the form in which our decision may be issued, not the speed of the review. If claimant is referring to subsection (2) of that rule, her request is, again, misplaced. That subsection permits us to act summarily upon motion of one of the parties if the appeal deals with certain kinds of orders and is not applicable here. The motion is denied.

of analysis." *Smiley v. Four Seasons Coach Leasing, Inc.*, Nos. 2016-06-0104, 2016-06-0105, 2016 TN Wrk. Comp. App. Bd. LEXIS 28, at *10 (Tenn. Workers' Comp. App. Bd. July 15, 2016) (citing *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656 (Tenn. 1982)). We also emphasized that "[w]hile no single factor is determinative, the Tennessee Supreme Court has repeatedly emphasized the importance of the right to control [the conduct of the work]." *Id.* (internal citation and quotation marks omitted). Finally, as we have previously explained, "[t]he fact that a company did not deduct social security or income taxes is not a controlling factor in deciding whether an employer-employee relationship existed." *Id.* at *11.

At an expedited hearing, an injured worker has the burden of coming forward with sufficient evidence from which the trial court could conclude the worker is likely to prevail at trial in proving entitlement to workers' compensation benefits. *See, e.g.*, *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5-6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). Further, the Tennessee Supreme Court has stated that "[o]nce an employment relationship is established, the employer bears the burden of proving that the worker was an independent contractor rather than an employee." *Lindsey v. Trinity Commc'ns Inc.*, 275 S.W.3d at 418.

NBT asserts on appeal that the trial court erred in its findings, and the preponderance of the evidence supports a determination that Claimant was an independent contractor. In making this argument, NBT relies primarily on the terms of the Contract to support its position. As the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel has observed, however:

> It is the duty of the court to determine if a worker is an employee or independent contractor, and *the employer cannot use a contract to take that responsibility from the court*. The Workers' Compensation Act similarly prohibits the use by an employer of any "contract or agreement, written or implied, or rule regulation or other device" to evade its workers' compensation obligations. The cited code section clearly establishes the public policy against the making of any agreement which would reduce an employer's liability for permanent disability benefits under the Act.

*Warner v. Potts*, No. M20093-02494-WC-R3-CV, 2005 Tenn. LEXIS 369, at *10 (Tenn. Workers' Comp. Panel Apr. 29, 2005) (internal citations omitted) (emphasis added). *See also* Tenn. Code Ann. § 50-6-114(a) (2024).

NBT correctly notes in its brief that once Claimant established the existence of a work relationship with the company, it had the burden of showing she was not an employee. Although it contends the trial court gave inappropriate weight to Claimant's testimony regarding NBT's control over the conduct of the work, it provided no evidence

to refute or rebut many aspects of her testimony. The trial court specifically found that NBT closely controlled Claimant's work activities, pointing to Claimant's testimony that she was required to use a certain script, that NBT set her appointments, and that she was required to attend weekly mandatory meetings to encourage improvements in sales. NBT also required Claimant to be available even when she did not have appointments. Finally, the court noted that supervisors did occasionally attend and monitor her sales calls. Thus, with no evidence to suggest NBT did *not* exercise the level of control described by Claimant in her sworn testimony, NBT did not meet its burden of proof at the expedited hearing, and the preponderance of the evidence supports the trial court's determination as to the "right to control the conduct of the work."[2]

Next, NBT contends the method of payment factor supports that Claimant is an independent contractor, relying on her receipt of a Form 1099 rather than a W-2 and her position as a "direct seller" for tax purposes, citing our prior decision in *Smiley v. Four Seasons Coach Leasing, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 28. Although we noted in *Smiley* that a worker's receipt of a Form 1099 rather than a W-2 generally favors an independent contractor status, we also stated, "this factor, standing alone, is insufficient to overcome the other factors that support finding an employment relationship." *Smiley*, 2016 TN Wrk. Comp. App. Bd. LEXIS 28, at *14. Claimant offered unrefuted testimony she was not paid as contemplated by the Contract and that such errors were not corrected. The court concluded this was a neutral factor as payment by commission is customary in sales work, regardless of whether the salesperson is an employee or an independent contractor. We conclude the evidence presented to date does not preponderate against the trial court's determination.

NBT next argues that Claimant's freedom to hire helpers, as expressly permitted in the Contract, supports its contention Claimant was an independent contractor. The court determined that although the Contract expressly permitted this practice, there was no evidence that Claimant or any other sales representatives had done this. The court also noted Claimant's unrebutted testimony that such an arrangement seemed inappropriate given the proprietary nature of the App and marketing materials. The trial court did not expressly state that this factor favored Claimant as an employee but did state "that this 'right,' while mentioned in the agreement, would be difficult to exercise." NBT argues that Claimant's testimony as to this issue was "conjecture" with respect to her assertion that it would be "difficult" to hire helpers due to the proprietary nature of the software. Again, however, NBT did not rebut Claimant's testimony at the hearing

---

[2] In regard to the right of termination, the court, citing our decision in *Hernandez v. Master Stucco*, Docket No. 2021-06-1105, 2023 TN Wrk. Comp. App. Bd. LEXIS 30 (Tenn. Workers' Comp. App. Bd. July 6, 2023), determined that either party's ability to terminate the Contract supported Claimant's position that she was an employee, as "[t]he power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor." *Id.* at *15 (quoting *Masiers*, 639 S.W.2d at 656). NBT agrees on appeal that the factor of termination supported employee status as found by the trial court.

and does not address explicit language in the Contract that speaks to this issue, namely paragraph 8, which states:

> [Claimant] acknowledges and agrees that such Confidential Information has been developed by [NBT] at great expense and is of great value to [NBT] and that maintaining the confidentiality of all such Confidential Information is critically important to [NBT] and its ability to compete.

The definition of "Confidential Information," contained in that same subsection of the Contract, identifies software, customer lists, and "all information received, acquired, learned[,] or obtained by [Claimant] from [NBT] in the period subsequent to the execution of this Agreement and prior to its termination." Claimant's testimony suggesting that hiring helpers would have presented significant difficulties is supported by this language in the Contract, and NBT offered no evidence that Claimant's hiring a helper or subcontractor would not have violated this provision. We cannot find the trial court erred in determining that this factor does not support Claimant having the status of independent contractor.

As to the provision of tools and equipment, Claimant used her own car, tablet, and phone, was required to pay for the App, and was not reimbursed for work-related mileage. However, NBT provided Claimant with all marketing materials that she was required to use in her sales and business cards that included the company's name. As such, the trial court determined that this factor did not favor either party. We conclude the preponderance of the evidence supports the court's determination that this factor was neutral based on the evidence submitted at the hearing.

Regarding whether Claimant could control her own schedule, NBT asserts that the trial court erred in concluding NBT exercised significant control over her schedule. The trial court determined that Claimant did not have the ability to schedule her own work hours due to NBT's practice of scheduling sales calls, setting mandatory meetings, and placing those appointments on Claimant's schedule. On the other hand, as NBT points out, Claimant did concede that she could take herself off the schedule if she did not want to work. Yet, NBT presented no evidence to rebut her assertion that she was treated negatively by NBT supervisors for taking time off, and the evidence submitted by Claimant in the form of text messages supports her testimony as to this issue. Moreover, Claimant testified without contradiction that she was required to be available at any time from 8:00 am to 4:00 pm for phone calls and potential sales calls. She further testified that she was unable to reschedule or cancel an appointment if necessary because she was only provided with the address of prospective customers, not their contact information. Finally, she testified to at least one instance where she was required to work a fifteen-hour day due to the distance between her various appointments. Thus, we conclude the preponderance of the evidence supports the trial court's finding as to this issue.

NBT does not dispute the trial court's determination regarding Claimant's "freedom to offer services elsewhere." The trial court found it to be the only factor that favored finding Claimant was an independent contractor despite her testimony that she would not have had any opportunity to do so because of her hours with NBT. The trial court relied on *Thompsen v. Concrete Solutions*, Docket No. 2014-04-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 3, at *21 (Tenn. Workers' Comp. App. Bd. Feb. 10, 2015), a case in which the injured worker similarly reported being unable to work elsewhere due to time constraints, although the parties agreed that he was allowed to do so. In *Thompsen*, we specifically stated that "[t]his is the only statutory factor that would *tend* to support a finding that the claimant was an independent contractor." *Id*. (emphasis added). However, the proof in *Thompsen* also showed that the injured worker's hours were "informal." *Id*. at *3. Further, the injured worker in *Thompsen* was not prohibited from working with the company's competitors, as Claimant was in the instant case. *Id*. at *3-4. Thus, unlike in *Thompsen*, Claimant's freedom to offer her services to NBT's competitors was limited contractually, and Claimant testified her hours of availability to offer her services to other companies was severely hampered by NBT's availability requirements. Considering the totality of the evidence presented on this issue, we respectfully disagree with the trial court's finding and conclude this factor supports an employer-employee relationship. *See also Carpet Barn, Inc. v. Neel*, No. 86-332-II, 1987 Tenn. App. LEXIS 2581, at *11 (Tenn. Ct. App. Mar. 20, 1987) (observing that "while sales personnel may have other jobs, they are not free to render services to others in the business of selling carpet" in determining the sales personnel were employees.) In short, we agree with the trial court that Claimant met her burden of showing she is likely to prevail at trial in proving she was an employee at the time of her alleged injury.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to NBT.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Julia Havey | ) | Docket No. 2024-60-3630 |
| | ) | |
| v. | ) | State File No. 38543-2024 |
| | ) | |
| SageHome, LLC, d/b/a | ) | |
| New Bath Today, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of July, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Emily Pfeiffer | | | | X | emily.pfeiffer@libertymutual.com rachel.dornier@libertymutual.com |
| Julia Havey | | | | X | juliagriggshavey@yahoo.com |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov